# EXHIBIT 4

## MERCHANT AGREEMENT

Agreement dated 02/25/2020 between **BUSINESS FUNDING SOURCE** ("**BFS**") and the merchant listed below ("the **Merchant**").

### MERCHANT INFORMATION

Merchant's Legal Name: MON ETHOS PRO CONSULTING LLC
D/B/A: MON ETHOS PRO CONSULTING    State of Incorporation / Organization: MA
Type of entity: ◉ Corporation ○ Limited Liability Company ○ Limited Partnership ○ Limited Liability Partnership ○ Sole Proprietor ○ Partnership
Physical Address: 63 SUMMIT AVE WINTHROP MA 02152
Mailing Address: 63 SUMMIT AVE WINTHROP MA 02152
Date business started (mm/yy): _____    Federal ID# ████████

### PURCHASE AND SALE OF FUTURE RECEIVABLES

Merchant hereby sells, assigns and transfers to BFS (making BFS the absolute owner) in consideration of the funds provided ("Purchase Price") specified below, all of Merchant's future accounts, contract rights and other obligations arising from or relating to the payment of monies from Merchant's customers and/or other third party payors (the "Total Gross Receipts") for the payment of Merchant's sale of goods or services until the amount specified below (the "Purchased Amount") has been remitted from the Merchant to BFS. Total Gross Receipts, hereinafter "Receipts," is defined as all payments made by cash, check, credit or debit card, electronic transfer or other form of monetary payment in the ordinary course of the merchant's business without subtracting any costs or expenses.

The Purchased Amount shall be paid to BFS by Merchant's irrevocably authorizing only one depositing account acceptable to BFS (the "Account") to remit the percentage of daily receipts specified below (the "Specified Percentage") of the Merchant's settlement amounts due from each transaction, until such time as BFS receives payment in full of the Purchased Amount. Merchant hereby authorizes BFS to ACH Debit the specified remittances from the Merchant's bank account on a daily basis and will provide BFS with all required access codes to view the account, and monthly bank statements. Merchant understands that it is responsible for ensuring that the Specified Percentage to be debited by BFS remains in the account and will be held responsible for any fees incurred by BFS resulting from a rejected ACH attempt or an event of default. (See Appendix A). BFS is not responsible for any overdrafts or rejected transactions that may result from BFS's ACH debiting the specified amounts under the terms of this agreement. BFS will either (i) debit the Specified Percentage on a daily basis, or (ii) if a Specific Daily Amount is specified hereunder, then BFS shall debit the Specific Daily Amount on each business day, and upon Merchant's request, and receipt of the Merchant's monthly bank statements, BFS shall, on or about the fifteenth day of each month, reconcile the Merchant's account by either crediting or debiting the difference between the amount debited and the Specified Percentage, from or back to the Merchant's bank account so that the amount debited each month equals the Specified Percentage. BFS also may, upon Merchant's request, adjust the amount of any payment due under this Agreement at BFS's sole discretion and as it deems appropriate. Notwithstanding anything to the contrary in this Agreement or any other agreement between BFS and Merchant, upon violation of any provision contained in Section 1.11 of the MERCHANT AGREEMENT TERMS AND CONDITIONS or the occurrence of an Event of Default under Section 3 of the MERCHANT AGREEMENT TERMS AND CONDITIONS, the Specified Percentage shall equal 100%. A list of all fees applicable under this agreement is annexed hereto in Appendix A.

Purchase Price: $ 30,000.00    Specified Percentage 20 %    Specific Daily Amount: $ 999.00    Receipts Purchased Amount: $ 44,970.00    Origination Fee: $ 2,999.00

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT AGREEMENT TERMS & CONDITIONS" AND THE "SECURITY AGREEMENT AND GUARANTY" ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS MERCHANT AGREEMENT.

**FOR THE MERCHANT (#1)**
By: DAVID A. WHITAKER
(Print Name and Title)    (Signature) [signed]

**FOR THE MERCHANT (#2)**
By: _____
(Print Name and Title)    (Signature)

**OWNER/GUARANTOR #1**
By: DAVID A. WHITAKER
(Print Name)    (Signature) [signed]

**OWNER/GUARANTOR #2**
By: _____
(Print Name)    (Signature)

**BFS FUNDING SERVICES, LLC**
By: _____    Sales Associate Name: _____
(Company Officer)    (Signature)

To the extent set forth herein, each of the parties is obligated upon his, her or its execution of the Agreement to all terms of the Agreement, including the Additional Terms set forth below. Each of above-signed Merchant and Owner(s) represents that he or she is authorized to sign this Agreement for Merchant, legally binding said Merchant to perform its obligations (including payment) hereunder, and that the information provided herein and in all of BFS documents, forms and recorded interviews is true, accurate and complete in all material respects. If any such information is false or misleading, Merchant shall be deemed in breach of all agreements between Merchant and BFS and BFS shall be entitled to all remedies available under law. BFS may produce a monthly statement reflecting the delivery of the Specified Percentage of Receivables from Merchant via the bank designated pursuant to Section 1.1 below ("Processor") to BFS. An investigative or consumer report may be made in connection with the Agreement. Merchant and each of the above-signed Owners authorizes BFS, its agents and representatives and any credit reporting agency engaged by BFS, to (i) investigate any references given or any other statements or data obtained from or about Merchant or any of its Owners for the purpose of this Agreement, and (ii) pull credit reports at any time now or for so long as Merchant and/or Owners(s) continue to have any obligation owed to BFS as a consequence of this Agreement or for BFS's ability to determine Merchant's eligibility to enter into any future agreement with Company.
**ANY MISREPRESENTATION MADE BY MERCHANT OR OWNER IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A BASIS FOR A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL MISREPRESENTATION.**

PROPERTY OF BUSINESS FUNDING SOURCE    1

MERCHANT AGREEMENT TERMS & CONDITIONS

## I. TERMS OF ENROLLMENT IN PROGRAM

**1.1 Merchant Deposit Agreement.** Merchant shall execute an agreement (the "Merchant Deposit Agreement") acceptable to BFS, and appoint a bank acceptable to BFS, to obtain electronic fund transfer services and/or ACH payments. Merchant shall provide BFS and/or its authorized agent with all of the information, authorizations and passwords necessary for verifying Merchant's receivables, receipts and deposits into the account. Merchant shall authorize BFS and/or its agent to deduct the amounts owed to BFS for the Receipts as specified herein from settlement amounts which would otherwise be due to Merchant from electronic check transactions, or other payment processing transactions, and to pay such amounts to BFS by permitting BFS to withdraw the specified percentages by ACH debiting of the account. The authorization shall be irrevocable absent BFS's written consent.

**1.2 Term of Agreement.** This Agreement shall have an indefinite term that shall last until all of Merchant's obligations to BFS are fully satisfied.

**1.3 Future Purchases.** BFS reserves the right to rescind the offer to make any purchase payments hereunder, in its sole discretion.

**1.4 Financial Condition.** Merchant and Guarantor(s) authorize BFS and its agents to investigate their financial responsibility and history, and will provide to BFS any bank or financial statements, tax returns, etc., as BFS deems necessary prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable for release of financial information. BFS is authorized to update such information and financial profiles from time to time as it deems appropriate.

**1.5 Transactional History.** Merchant authorizes its bank to provide BFS with Merchant's banking and/or credit-card processing history to determine qualification or continuation in this program.

**1.6 Indemnification.** Merchant and Guarantor(s) jointly and severally indemnify and hold harmless Processor, its officers, directors and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by Processor resulting from (a) claims asserted by BFS for monies owed to BFS from Merchant and (b) actions taken by Processor in reliance upon information or instructions provided by BFS.

**1.7 No Liability.** In no event will BFS be liable for any claims asserted by Merchant under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by Merchant and Guarantor(s).

**1.8 Reliance on Terms.** Sections 1.1, 1.7 and 2.5 of this Agreement are agreed to for the benefit of Merchant, BFS and Processor, and notwithstanding the fact that Processor is not a party of this Agreement, Processor may rely upon their terms and raise them as a defense in any action.

**1.9 Sale of Receipts.** **MERCHANT AND BFS AGREE THAT THE PURCHASE PRICE UNDER THIS AGREEMENT IS IN EXCHANGE FOR THE PURCHASED AMOUNT AND THAT SUCH PURCHASE PRICE IS NOT INTENDED TO BE, NOR SHALL IT BE CONSTRUED AS A LOAN FROM BFS TO MERCHANT.** Merchant agrees that the Purchase Price is in exchange for the Receipts pursuant to this Agreement and equals the fair market value of such Receipts. BFS has purchased and shall own all the Receipts described in this Agreement up to the full Purchased Amount as the Receipts are created. Payments made to BFS in respect to the full amount of the Receipts shall be conditioned upon Merchant's sale of products and services and the payment therefore by Merchant's customers in the manner provided in Section 1.1. In no event shall any amount paid or to be paid hereunder, or the aggregate of such amounts, be deemed as interest. In the event that a court determines that BFS has charged or received interest hereunder in excess of the highest applicable rate, the rate in effect hereunder shall automatically be reduced to the maximum rate permitted by applicable law and BFS shall promptly refund to Merchant any interest received by BFS in excess of the maximum lawful rate, it being intended that Merchant not pay or contract to pay, and that BFS not receive or contract to receive, directly or indirectly in any manner whatsoever, interest, much less interest in excess of that which may be paid by Merchant under applicable law.

**1.10 Power of Attorney.** Merchant irrevocably appoints BFS as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to BFS from Processor, or in the case of a violation by Merchant of Section 1.12 or the occurrence of an Event of Default under Section 4 hereof, from Merchant, under this Agreement, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral; (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to BFS; and (v) to file any claims or take any action or institute any proceeding which BFS may deem necessary for the collection of any of the unpaid Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Purchased Amount.

PROPERTY OF BUSINESS FUNDING SOURCE

**1.11 Protections against Default.** The following Protections 1 through 9 may be invoked by BFS , immediately and without notice to Merchant in the event: (a) Merchant takes any action to discourage the use of electronic check processing that are settled through Processor, or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks for the purchase of Merchant's services and products including but not limited to direct deposit of any checks into a bank account without scanning into the BFS electronic check processor; (b) Merchant changes its arrangements with Processor in any way that is adverse to BFS ; (c) Merchant changes the electronic check processor or other payment processor through which the Receipts are settled from Processor to another electronic check processor or other payment processor, or permits any event to occur that could cause diversion of any of Merchant's check transactions to another processor without the express prior written consent of BFS ; (d) Merchant interrupts the operation of this business, transfers, moves, sells, disposes, transfers or otherwise conveys its business or assets without (i) the express prior written consent of BFS , and (ii) the written agreement of any purchaser or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to BFS ; or (e) Merchant takes any action, fails to take any action, or offers any incentive—economic or otherwise—the result of which will be to induce any customer or customers to pay for Merchant's services with any means other than checks that are settled through Processor. These protections are in addition to any other remedies available to BFS at law, in equity or otherwise pursuant to this Agreement.

   **Protection 1.** The full uncollected Purchase Amount plus all fees due under this Agreement and the attached Security Agreement become due and payable in full immediately.
   **Protection 2.** BFS may enforce the provisions of the Personal Guarantee of Performance against the Guarantor.
   **Protection 3.** Merchant shall, upon execution of this Agreement, deliver to BFS an executed confession of judgment in favor of BFS in the amount of the Purchase Amount stated in the Agreement. Upon breach of any provision in this Section 1.11 or the occurrence of an Event of Default under Section 3, BFS may enter that confession of judgment as a judgment with the Clerk of the Court and execute thereon.
   **Protection 4.** BFS may enforce its security interest in the Collateral identified in the security agreement herein.
   **Protection 5.** The entire Purchase Amount shall become immediately refundable to BFS from Merchant.
   **Protection 6.** BFS may proceed to protect and enforce its rights and remedies by lawsuit. In any such lawsuit, in which BFS recover judgment against Merchant, Merchant shall be liable for all of BFS's costs of lawsuit, including but not limited to all reasonable attorneys' fees and court costs.
   **Protection 7.** Merchant shall, if requested by BFS , deliver to BFS an executed assignment of lease of Merchant's premises in favor of BFS . Upon breach of any provision in this agreement BFS may exercise its rights under such assignment of lease.
   **Protection 8.** BFS may debit Merchant's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account or otherwise, in an amount consistent with the Specified Percentage or Specific Daily Amount.
   **Protection 9.** BFS shall have the right, without waiving any of its rights and remedies and without notice to Merchant and/or Guarantor(s), to notify Merchant's credit card processor of the sale of Receipts hereunder and to direct such credit card processor to make payment to BFS of all or any portion of the amounts received by such credit card processor on behalf of Merchant, Merchant hereby grants to BFS an irrevocable power-of-attorney, which power-of-attorney shall be coupled with an interest, and hereby appoints BFS or any of BFS's representatives as Merchants attorney-in-fact, to take any and all action necessary to direct such new or additional credit card processor to make payment to BFS as contemplated by this Section.

**1.12 Protection of Information.** Merchant and each person signing this Agreement on behalf of Merchant and/or as Owner, in respect of himself or herself personally, authorizes BFS to disclose information concerning Merchant's and each Owner's credit standing (including credit bureau reports that BFS obtains) and business conduct only to agents, affiliates, subsidiaries, and credit reporting bureaus. Merchant and each Owner hereby waives to the maximum extent permitted by law any claim for damages against BFS or any of its affiliates relating to any (i) investigation undertaken by or on behalf of BFS as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

**1.13 Confidentiality.** Merchant understands and agrees that the terms and conditions of the products and services offered by BFS , including this Agreement and any other BFS documentations (collectively, "Confidential Information") are proprietary and confidential information of BFS . Accordingly unless disclosure is required by law or court order, Merchant shall not disclose Confidential Information of BFS to any person other than an attorney, accountant, financial advisor or employee of Merchant who needs to know such information for the purpose of advising Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising Merchant and first agrees in writing to be bound by the terms of this Section 1.13.

**1.14 Publicity.** Merchant and each Owner only authorizes BFS to use its, his or her name in a listing of clients and in advertising and marketing materials with their express written consent.

**1.15 D/B/A's.** Merchant hereby acknowledges and agrees that BFS may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between BFS and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

## II. REPRESENTATIONS, WARRANTIES AND COVENANTS

Merchant represents, warrants and covenants that as of this date and during the term of this Agreement:

**2.1 Financial Condition and Financial Information.** Its bank and financial statements, copies of which have been furnished to BFS (collectively, "Statements"), fairly represent the financial condition of Merchant at the dates of such Statements. From the date(s) of the Statements through the date of the execution of this Agreement, there have been no material adverse changes, financial or otherwise, in such condition, operation or ownership of Merchant. Merchant has a continuing, affirmative obligation to advise BFS of any material adverse change in its financial condition, operation or ownership. BFS may request additional bank and financial statements ("Additional Statements") at any time during the performance of this Agreement and the Merchant shall provide them to BFS within 5 business days. Merchant's failure to do so

is a material inducement for BFS to enter into this Agreement and rely upon the Additional Statements as the financial condition of Merchant at the date of such Additional Statements.

**2.2 Governmental Approvals.** Merchant is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties fund to conduct the business in which it is presently engaged.

**2.3 Authorization.** Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

**2.4 Insurance.** Merchant will maintain business-interruption insurance naming BFS as loss payee and additional insured in amounts and against risks as are satisfactory to BFS and shall provide BFS proof of such insurance upon request.

**2.5 Electronic Check & Payment Processing Agreement.** Merchant will not change its Processor, add terminals, change its financial institution or bank account(s) or take any other action that could have any adverse effect upon Merchant's obligations under this Agreement, without BFS's prior written consent. Any such change shall be a material breach of this Agreement.

**2.6 Change of Name or Location.** Merchant will not conduct Merchant's businesses under any name other than as disclosed to the Processor and BFS or change any of its places of business without the prior written consent of BFS .

**2.7 Daily Batch Out.** Merchant will batch out receipts with the Processor on a daily basis.

**2.8 Estoppel Certificate.** Merchant will at any time, and from time to time, upon at least one (1) day's prior notice from BFS to Merchant, execute, acknowledge and deliver to BFS and/or to any other person, person firm or corporation specified by BFS , a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Purchased Amount or any portion thereof has been repaid.

**2.9 No Bankruptcy.** As of the date of this Agreement, Merchant is solvent, and is not contemplating any bankruptcy or insolvency proceedings. Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it; that it has not in the last six months consulted with an attorney about filing bankruptcy; and that it presently has no intention to discontinue operating its business.

**2.10 Working Capital Funding.** Merchant shall not enter into any arrangement, agreement or commitment that relates to or involves the Receipts, whether in the form of a purchase of, a loan against, collateral against or the sale or purchase of credits against, Receipts or future check sales with any party other than BFS .

**2.11 Unencumbered Receipts.** Merchant has good, complete and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with BFS , or adverse to the interests of BFS .

**2.12 Business Purpose.** Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

**2.13 Default Under Other Contracts.** Merchant's execution of and/or performance under this Agreement will not cause or create an event of default by Merchant under any contract with another person or entity.

### III. EVENTS OF DEFAULT AND REMEDIES

**3.1 Events of Default.** The occurrence of any of the following events shall constitute an "Event of Default" hereunder: (a) Merchant shall violate any term or covenant in this Agreement; (b) Any representation or warranty by Merchant in this Agreement shall prove to have been incorrect, false or misleading in any material respect when made; (c) Merchant shall make a general assignment for the benefit of creditors; (d) the sending of notice of termination by Guarantor; (e) Merchant shall transport, move, interrupt, suspend, dissolve or terminate its business; (f) Merchant shall transfer or sell all or substantially all of its assets; (g) Merchant shall make or send notice of any intended bulk sale or transfer by Merchant; (h) Merchant shall use multiple depository accounts without the prior written consent of BFS ; (i) Merchant shall change its depositing account without the prior written consent of BFS ; (j) Merchant shall perform any act that reduces the value of any Collateral granted under this Agreement; (k) Merchant shall default under any of the terms, covenants and conditions of any other agreement with BFS ; (l) Merchant blocks the bank account and thereby stops BFS from making a scheduled ACH debit; (m) the Specific Daily Amount fails to clear due to insufficient funds on four occasions and Merchant does not contact BFS in connection with such failures to notify it of the shortage of funds and its causes and expected duration, or request a reduction of the Specific Daily Amount.

**3.2 Remedies.** In case any Event of Default occurs and is not waived pursuant to Section 4.4.1 hereof, BFS may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Merchant's obligations hereunder (including the Personal Guarantee) or any other legal or equitable right or remedy. All rights, powers and remedies of BFS in connection with this Agreement may be exercised at any time by BFS after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity. Merchant, BFS and Guarantor(s) acknowledge and agree that if Merchant has not violated the terms of this

PROPERTY OF BUSINESS FUNDING SOURCE          4

Agreement. Such Event of Default is not reasonably capable of being cured and the Merchant's operations shall not (a) constitute a breach or (b) obligate Guarantor(s) to pay the purchased amount to BFS.

**3.3 Costs.** Merchant shall pay to BFS all reasonable costs associated with (a) a breach by Merchant of the Covenants in this Agreement and the enforcement thereof, and (b) the enforcement of BFS's remedies set forth in Section 1.11 above, including but not limited to court costs and attorneys' fees.

**3.4 Required Notifications.** Merchant is required to give BFS written notice within 24 hours of any bankruptcy filing. Merchant is required to give BFS seven days' written notice prior to the closing of any sale of all or substantially all of the Merchant's assets or stock.

## IV. MISCELLANEOUS

**4.1 Modifications; Agreements.** No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by BFS.

**4.2 Assignment.** BFS may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part.

**4.3 Notices.** All notices, requests, consent, demands and other communications hereunder shall be delivered by certified mail, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement and shall become effective only upon receipt.

**4.4 Waiver Remedies.** No failure on the part of BFS to exercise, and no delay in exercising, any right under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

**4.5 Binding Effect. This Agreement shall be binding upon and inure to the benefit of Merchant, BFS and their respective successors and assigns, except that Merchant shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of BFS which consent may be withheld in BFS's sole discretion. BFS reserves the rights to assign this Agreement with or without prior written notice to Merchant.**

**4.6 Governing Law, Venue and Jurisdiction.** This Agreement, and any suit, action or proceeding relating thereto, shall be governed by and construed in accordance with the laws of the State of New York, without regard to any applicable principles of conflicts of law. Any suit, action or proceeding arising from or related to the interpretation, performance or breach hereof, shall be instituted exclusively in a court sitting in New York (the "Acceptable Forums"). Merchant agrees that the Acceptable Forums are convenient to it, and submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Should a proceeding be initiated in any other forum, contrary to the requirement above, Merchant waives any right to oppose any motion or application made by BFS to transfer and/or dismiss such proceeding. Merchant and Guarantor hereby agree that the mailing of any Summons and Complaint in any proceeding commenced by BFS by certified or registered mail, to the Mailing Address listed on this Agreement, or via email to the Email Address listed on this Agreement, or any other process required by any such court will constitute valid and lawful service of process against them without the necessity for service by any other means provided by statute or rule of court, but without invalidating service performed in accordance with such other provisions. **4.7 Survival of Representation, etc.** All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

**4.8 Severability.** In case any of the provisions in this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected or impaired.

**4.9 Entire Agreement.** This Agreement and Security Agreement hereto embody the entire agreement between Merchant and BFS and supersede all prior agreements and understandings relating to the subject matter hereof.

**4.10 JURY TRIAL WAIVER. THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT, IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OF WHICH THIS AGREEMENT IS A PART OR THE ENFORCEMENT HEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND HAS CONSIDERED THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS OR HAS DECIDED NOT TO AVAIL HIMSELF/HERSELF OF THAT OPPORTUNITY.**

**4.11 CLASS ACTION WAIVER. THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY AGREE THAT: (1) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND (2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.**

**4.12 Facsimile Acceptance.** Facsimile signatures shall be deemed acceptable for all purposes.

**4.13 Heter Iska.** All of our business are done in accordance to the "HI-BP" which can be reviewed at the following link "Link" https://www.dropbox.com/s/lvkkpd46xildv3v/Business%20Funding%20Source%20S.pdf?dl=0

Initials: _____  [INITIAL HERE]

PROPERTY OF BUSINESS FUNDING SOURCE          5

Merchant's Legal Name: MON ETHOS PRO CONSULTING LLC     D/B/A: MON ETHOS PRO CONSULTING

Physical Address: 63 SUMMIT AVE WINTHROP MA 02152

Federal ID# ▇▇▇▇▇▇▇

## SECURITY AGREEMENT

**Security Interest.** To secure Merchant's payment and performance obligations to BFS under the Merchant Agreement, Merchant hereby grants to BFS a security interest in (a) all accounts, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are defined in Article 9 of the New York Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Merchant; and (b) all proceeds, as that term is defined in Article 9 of the UCC (a and b collectively, the "Collateral").

**Cross-Collateral.** To secure Guarantor's payment and performance obligations to BFS under this Security Agreement and Guaranty (the "Agreement"), Guarantor hereby grants BFS a security interest in _____ (the "Additional Collateral"). Guarantor understands that BFS will have a security interest in the aforesaid Additional Collateral upon execution of this Agreement. Merchant and Guarantor each acknowledge and agree that any security interest granted to BFS under any other agreement between Merchant or Guarantor and BFS (the "Cross-Collateral") will secure the obligations hereunder and under the Merchant Agreement. Merchant and Guarantor each agree to execute any documents or take any action in connection with this Agreement as BFS deems necessary to perfect or maintain BFS's first priority security interest in the Collateral, the Additional Collateral and the Cross-Collateral, including the execution of any account control agreements. Merchant and Guarantor each hereby authorize BFS to file any financing statements deemed necessary by BFS to perfect or maintain BFS's security interest, which financing statement may contain notification that Merchant and Guarantor have granted a negative pledge to BFS with respect to the Collateral, the Additional Collateral and the Cross-Collateral, and that any subsequent lienor may be tortiously interfering with BFS's rights. Merchant and Guarantor shall be liable for and BFS may charge and collect all costs and expenses, including but not limited to attorney's fees, which may be incurred by BFS in protecting, preserving and enforcing BFS's security interest and rights. Merchant further acknowledges that BFS may use another legal name and/or D/B/A when designating the Secured Party, when the BFS files the above-referenced financing statement(s).

**Negative Pledge.** Merchant and Guarantor each agree not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral, the Additional Collateral or the Cross-Collateral, as applicable.

**Consent to Enter Premises and Assign Lease.** BFS shall have the right to cure Merchant's default in the payment of rent on the following terms. In the event Merchant is served with papers in an action against Merchant for nonpayment of rent or for summary eviction, BFS may execute its rights and remedies under the Assignment of Lease. Merchant also agrees that BFS may enter into an agreement with Merchant's landlord giving BFS the right: (a) to enter Merchant's premises and to take possession of the fixtures and equipment therein for the purpose of protecting and preserving same; and (b) to assign Merchant's lease to another qualified Merchant capable of operating a business comparable to Merchant's at such premises.

**Remedies.** Upon any Event of Default, BFS may pursue any remedy available at law (including those available under the provisions of the UCC), or in equity to collect, enforce, or satisfy any obligations then owing, whether by acceleration or otherwise.

## GUARANTY

**Personal Guaranty of Performance.** The undersigned Guarantor(s) hereby guarantees to BFS Merchant's performance of all of the representations, warranties, covenants made by Merchant in this Agreement and the Merchant Agreement, as each agreement may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations"). Guarantor's obligations are due at the time of any breach by Merchant of any representation, warranty, or covenant made by Merchant in this Agreement and the Merchant Agreement.

**Guarantor Waivers.** In the event that Merchant defaults under the Merchant Agreement, BFS may enforce its rights under this Agreement without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral, Additional Collateral or Cross-Collateral BFS may hold pursuant to this Agreement or any other guaranty.

BFS does not have to notify Guarantor of any of the following events and Guarantor will not be released from its obligations under this Agreement if it is not notified of: (i) Merchant's failure to pay timely any amount owed under the Merchant Agreement; (ii) any adverse change in Merchant's financial condition or business; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; (iv) BFS's acceptance of this Agreement; and (v) any renewal, extension or other modification of the Merchant Agreement or Merchant's other obligations to BFS. In addition, BFS may take any of the following actions without releasing Guarantor from any of its obligations under this Agreement: (i) modify the Merchant Agreement or Merchant's other obligations to BFS; (ii) release Merchant from its obligations to BFS; (iii) sell, release, impair, waive or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under this Agreement until the Receipts Purchased Amount and Merchant's other obligations to BFS under the Merchant Agreement and this Agreement are paid in full. Guarantor shall not seek reimbursement from Merchant or any other guarantor for any

PROPERTY OF BFS FUNDING SERVICES, LLC                6

amounts paid by it, including without limitation, pending or future rights and remedies it may have against Merchant, any other guarantor, or any collateral provided by Merchant or any other guarantor, for any amounts paid by it, or acts performed by it, under this Agreement: (i) subrogation ; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event that BFS must return any amount paid by Merchant or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under this Agreement shall include that amount.

**Guarantor Acknowledgement.** Guarantor acknowledges that: (i) He/She understands the seriousness of the provisions of this Agreement; (ii) He/She has had a full opportunity to consult with counsel of his/her choice; and (iii) He/She has consulted with counsel of its choice or has decided not to avail himself/herself of that opportunity.

**Joint and Several Liability.** The obligations hereunder of the persons or entities constituting Guarantor under this Agreement are joint and several.

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT AGREEMENT," INCLUDING THE "TERMS AND CONDITIONS," ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS SECURITY AGREEMENT AND GUARANTY. CAPITALIZED TERMS NOT DEFINED IN THIS SECURITY AGREEMENT AND GUARANTY, SHALL HAVE THE MEANING SET FORTH IN THE MERCHANT AGREEMENT, INCLUDING THE TERMS AND CONDITIONS.

**MERCHANT #1**
By: DAVID A. WHITAKER
(Print Name and Title)
SS# ████████

X _____ [SIGN HERE]
(Signature)
**Driver's License Number:** _____

**ME**
By: _____
(Print Name and Title)
SS# _____

X _____ [SIGN HERE]
(Signature)
**Driver's License Number:** _____

**OWNER/GUARANTOR #1**
By: DAVID A. WHITAKER
(Print Name)
SS# ████████

X _____ [SIGN HERE]
(Signature)
**Driver's License Number:** _____

**OWNER/GUARANTOR #2**
By: _____
(Print Name )
SS# _____

X _____ [SIGN HERE]
(Signature)
**Driver's License Number:** _____

PROPERTY OF BUSINESS FUNDING SOURCE

# APPENDIX A: THE FEE STRUCTURE

A. Underwriting Fee- $ 2,999.00 to cover Underwriting and related expenses.

B. UCC Filing Fee - $ 499.00- and are not an automated process, requiring us to charge this fee to cover costs.

C. NSF Fee Standard - $50.00 (each) up to THREE TIMES ONLY before a default is declared.

D. Rejected ACH- $100.00 – When Merchant directs bank to reject our ACH Debit.

E. Bank Change Fee- $50.00- When Merchant requires a change of Bank Account to be debited, requiring us to adjust our system.

F. Blocked ACH Payment- $5,000.00—This fee is applied when Merchant directs the bank to BLOCK our ACH Debits. Blocking ACH Debits will place Merchant's account in default.

G. Default Fee- - of $2500.00 shall be applied to Merchant's account in the event that Merchant defaults under the terms of the Merchant Agreement. See Merchant Agreement at p.2, ¶3.1.

H. ACH Processing Fee- $249.00 (or 10% of the funded amount, depending on size of advance) ACH's are labor intensive

I. Account Management Fee- At the end of each month, Merchant will pay to BFS an Account Management Fee. This fee will not be applied towards the reduction of the Purchased Amount. This monthly fee will equal the average of all the payments received as a —Specified Percentage of the Merchants settlement amount for that Month.

J. Miscellaneous Service Fee- Merchant shall pay certain fees for services related to the origination and maintenance of Accounts. Each Merchant shall receive their funding electronically to their designated bank account and will be charged $30.00 for a Fed Wire or 0.00 for a bank ACH. The current charge for the underwriting and origination of each Merchant

K. Working Capital Funding- A fee of $5,000.00 or 10% shall be applied every time Merchant enters into any arrangement, agreement, or commitment that relates to or involves the Receipts, whether in the form of a purchase of, a loan against, collateral against or the sale or purchase of credits against, Receipts or future check sales with any party other than BFS. See Merchant Agreement at p.2, ¶2.10.

L. Contract Service Fee- Commencing at date funded (the "Start Date"), merchant shall pay a fee of $499.00 per month (the "Monthly Fee"); the Monthly Fee is payable on the first business day of each calendar month during the term of this Agreement, at a minimum of three months.

**(ALL FEES ARE SUBJECT TO CHANGE)**

PROPERTY OF BUSINESS FUNDING SOURCE

8

MERCHANT INITIALS: _ZO_   INITIAL HERE

# AUTHORIZATION AGREEMENT FOR DIRECT DEPOSIT (ACH CREDIT) AND DIRECT PAYMENTS (ACH DEBITS)

This Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits) is part of (and incorporated by reference into) the Merchant Agreement. Merchant should keep this important legal document for Merchant's records.

**DISBURSEMENT OF ADVANCE PROCEEDS.** By signing below, Merchant authorizes BFS to disburse the Advance proceeds less the amount of any applicable fees upon Advance approval by initiating an ACH credit to the checking account indicated below (or a substitute checking account Merchant later identifies and that is acceptable to BFS ) (hereinafter referred to as the "Designated Checking Account"). This authorization is to remain in full force and effect until BFS has received written notification from Merchant of its termination in such time and in such manner as to afford BFS and Merchant's depository bank a reasonable opportunity to act on it.

**BUSINESS PURPOSE ACCOUNT.** By signing below, Merchant attests that the Designated Checking Account was established for business purposes and not primarily for personal, family or household purposes.

**MISCELLANEOUS.** BFS is not responsible for any fees charged by Merchant's bank as the result of credits or debits initiated under this agreement. The origination of ACH transactions to Merchant's account must comply with the provisions of U.S. law.

I, (We) **MON ETHOS PRO CONSULTING LLC** Hereby Authorize, **BUSINESS FUNDING SOURCE** ("BFS ") or its designer BUSINESS FUNDING SOURCE or an affiliate thereof, to Electronically (ACH) debit the Bank Account Below, of which I am a signer:

Bank Name: _____ Branch: _____
ABA Routing: _____ DDA Account: _____
For the amount of up to $_____ (Or) Percentage of each Banking Deposit: 20 %
On the Following Days: **MONDAY - FRIDAY**

This authorization is to remain in full force and effect until BFS has received written notification from me at least 5 banking days prior of its termination to afford BFS a reasonable opportunity to act on it.

Signer: (Print Name / Title) **DAVID A. WHITAKER** Date: **02/25/2020**

X _[signature]_   SIGN HERE

PROPERTY OF BUSINESS FUNDING SOURCE

9

# Bank Login Authorization

Dear Merchant,

Thank you for accepting this offer from BFS . We look forward to being your funding partner for as long as you need

ACH Program:

BFS will require viewing access to your bank account, each business day, in order to calculate the amount of your payments to BFS . Please be assured that we carefully safeguard your confidential information, and only essential personnel will have access to it.

BFS will also require viewing access to your bank account, prior to funding, as part of our underwriting process. **The requested access is for "look in" or viewing purposes only, BFS is not requesting any change or modification access to your account.**

Please fill out the form below with your information necessary to access your account. *Be sure to indicate capital or lower case letters.

**Name of Bank:** _____

**Bank Portal Website:** _____

**Username:** _____

**Password:** _____

Security Question/Answer 1: _____

Security Question/Answer 2: _____

Security Question/Answer 3: _____

Any other information necessary to access your account: _____

**AGREED AND ACKNOWLEDGED:**

Signature: ✗ _[signature]_  Date: 02/25/2020
(Owner)

Print Name: (owner's name) DAVID A. WHITAKER

Company Name: (legal entity) MON ETHOS PRO CONSULTING LLC

Address: (merchant's business address) 63 SUMMIT AVE WINTHROP MA 02152

Business Phone: (merchant's business phone number) _____

Please note: In the event that we are unable to access your account, we will take a daily estimate payment. An additional $39 fee will be assessed for each day we don't have access. Please be advised that failure to timely reestablish our access ability is an "Event of Default" as well as a breach of contract.

All remedies available to us will be pursued and penalties will be enforced.

PROPERTY OF BUSINESS FUNDING SOURCE

# One Time ACH Payment Authorization Form

Sign and complete this form to authorize Fund Capital LLC to make a one time ACH debit to your business bank account.

By signing this form you give us permission to debit your account for the amount indicated on or after the indicated date. This is permission for a single transaction only, and does not provide authorization for any additional unrelated debits or credits to your account.

**Please complete the information below:**

___Mon Ethos Pro Consulting LLC___ authorizes Fund Capital LLC to charge its business bank
(company name)

account indicated below for ___$3,000___ on or after ___02/25/2020___.
                              (amount)                            (date)

**Company Name**  Mon Ethos Pro Consulting LLC  **(Company)**

**Billing Address**  63 Summit AVE      **Phone#**  8572724053

**City, State, Zip**  Winthrop, MA 02152      **Email**  david@monethos.com

---

**Company Name on Account:**  Mon Ethos Pro Consulting LLC

**Bank Name:**  BBVA USA

**Bank Account Number:**  ▅▅▅▅▅▅▅

**Bank Routing #:**  ▅▅▅▅▅▅▅

**Bank City/State:**

This Business Bank Account is Enabled for ACH Transactions ✓ Yes   ☐ No

---

**SIGNATURE**  _[signature]_      **DATE**  2/25/2020

**NAME**      **TITLE**

I certify that I am an authorized representative of the Company indicated above and that I have the authority to authorize this payment on the Company's behalf. Company understands that because this is an electronic transaction, these funds may be withdrawn from its account as soon as the above noted transaction date, and that it will have limited time to report and dispute errors. In the case the transaction is returned for Non Sufficient Funds (NSF) Company understands that Fund Capital LLC may at its discretion attempt to process the charge again within 30 days, and agrees to an additional <insert $> charge for each attempt returned NSF, which will be initiated as a separate transaction from the authorized payment. Company has certified that the above business bank account is enabled for ACH transactions, and agrees to reimburse Fund Capital LLC for all penalties and fees incurred as a result of Company's bank rejecting ACH debits or credits as a result of the account not being properly configured for ACH transactions. Both parties agree to be bound by NACHA Operating Rules as they pertain to this transaction. Company acknowledges that the origination of ACH transactions to its account must comply with the provisions of U.S. law. Company agrees not to dispute this transaction with its bank provided the transaction corresponds to the terms indicated in his authorization form.